## SMITH VS. WINGER.

Whether to allow the deposition of a witness to be contradicted, by evidence of contradictory statements made by him, without calling his attention thereto is within the discretion of the trial Court, and not reviewable.

Error to Common Pleas No. 1, of Philadelphia County No. 94, July Term, 1880.

The facts of the case are set forth in the opinion of the Supreme Court.

*Henry B. Freeman, Esq.*, for plaintiff in error, cited Hoffman vs. Foster, 7 Wr., 137; Hutchinson vs. Boggs, 28 Pa., 294; Albietz vs. Miller, 37 Pa., 367; Shoenberger vs. Hackman, 37 Pa., 87; Truby vs. Byers, 6 Pa., 347; Yams vs. Hitner, 9 Pa., 441; Cutbush vs. Gilbert, 4 S. & R., 555; Reakert vs. Sanford, 5 W. & S., 164. The Court should have admitted testimony of Sanders' statements, which contradict his deposition; Eldred vs. Hazlett, 33 Pa., 317; Neely vs. Neely, 17 Pa., 227; Wertz vs. May, 21 Pa., 274; Bull vs. Towson, 4 W. & S., 557; Roberts vs. Collins, 6 Iredell, 223; Tucker vs. Welsh, 17 Mass., 160; Wilkins vs. Babbershell, 32 Maine, 184; Pocock vs. Billing, 2 Bingham, 269; Phelan vs. Bonhem, 4 Eng., 389. The credibility of Sanders was a question for the jury; Madara vs. Eversole, 62 Pa., 160; Weidler vs. Bank, 11 S. & R., 134; Rife vs. Galbraith, 3 P. & W. 204.

*L. C. Cleeman, Esq.*, contra, cited, as to the admission of evidence to contradict Sanders' deposition, 1 Greenleaf on Evidence, 462; Queen's Case, 2 Brod. & Bing., 313; Neely vs. Neely, 17 Pa., 227; Strobert vs. Dryden, 1 M. & W., 615; Conrad vs. Griffey, 16 Howard, 38; Runyan vs. Price, 15 Ohio St., 1; McAteer vs. McMullen, 2 Pa., 32; Wright vs. Cumpstey, 41 Pa., 102.

The Supreme Court reversed the judgment of the Common Pleas on March, 7th, 1881, in the following opinion, per

GREEN, J:

This was an action by the holder of a promissory note against its maker. The note was payable to the order of Philip Moneghan. An affidavit of defense was filed, alleging that the note was obtained from Moneghan by fraud, and that the endorsement of his name upon the note was a forgery.

This put the plaintiff upon proof of his title, for value paid without notice of any fraud, and before maturity. For the purpose of making that proof, he examined, under a commission, one Levi Sanders, who testified, the note was delivered to him shortly after its date, and long before its maturity, by Moneghan, whose name was endorsed upon the note at the time it was delivered; that Moneghan was unable to write; that he (witness) did not personally know who had endorsed the name "Philip Moneghan" on the note, but that he knew that Moneghan's daughter always endorsed her father's name upon his notes and checks, and that the endorsement was in the same handwriting, he having seen her frequently write her father's endorsement before this. He further testified that he received the note from Moneghan in part payment for cattle which he had previously sold him, and that he sold the note to George W. Brumbaugh for value before maturity. The latter being examined testified, he sold the note to plaintiff for value and before maturity. The defendant being sworn, testified, he gave the note as an accommodation note for the benefit of Mrs. Moneghan, so that she could buy cattle and carry on business; that Philip Moneghan was unable to read or write; that the endorsement on the note was not his endorsement, and that Moneghan always made his mark as far as he saw him sign.

Now, it is very plain that, under the testimony for the plaintiff, if believed by the jury, he was entitled to recover. It is true there was no direct proof of authority from Philip Moneghan to his daughter Mary to endorse this note in his name, or even to endorse his paper generally. But the witness Sanders did testify that she had frequently done so, and from this habit, in the absence of contradictory testimony, the jury would have been at liberty to infer an authority to make the endorsement in question. There was some evidence given by the defendant that Moneghan's mode of endorsement was by making his mark; the effect of these features of the testimony was to carry the case to the jury, with instructions that if they believed the plaintiff's witness, they might find a verdict in his favor. But, unfortunately, the learned judge who tried the case gave the jury a binding instruction to find for

the plaintiff, and for this we are obliged to reverse the case. It was doubtless done in the hurry of the trial, and without considering there was some conflicting testimony ; but, of course, it was erroneous, as the jury alone could dispose of the case in that condition of the evidence. The first, second and third assignments are not sustained, as the testimony offered was clearly admissible. The evidence offered and rejected under the fourth, fifth and sixth assignments was proposed to be given to contradict the witness Sanders, by proving his declarations in the presence of different witnesses, but without his being previously asked whether he had made such statements at the time and place indicated. As his testimony had been taken under a commission, there was but an imperfect opportunity to propound appropriate questions to lay the ground for subsequent contradiction. We think that, in such circumstances, the offer to prove the contradictory declarations, without the usual preliminary examination, is a matter resting in the sound discretion of the Court, and therefore not reviewable here. As the case goes back for another trial, the discussion of the matters involved in these assignments is not important.

Judgment reversed and *venire facias de novo* awarded.